EUNICE NICHOLSON v. HUGH CHATHAM MEMORIAL HOSPITAL, INC. AND DR. RICHARD B. MERLO, M.D.

No. 104

(Filed 3 June 1980)

1. **Husband and Wife § 9— consortium defined**

   Consortium embraces service, society, companionship, sexual gratification, and affection.

2. **Husband and Wife § 9— action for loss of consortium permitted—joinder required with personal injury action**

   A spouse may maintain a cause of action for loss of consortium due to the negligent actions of third parties so long as that action for loss of consortium is joined with any suit the other spouse may have instituted to recover for his or her personal injuries. The cases of *Hinnant v. Tidewater Power Co.*, 189 N.C. 120, which took away the right of the wife to sue for loss of consortium, and *Helmstetler v. Duke Power Co.*, 224 N.C. 821, which eliminated the common law cause of action for consortium for the husband, are expressly overruled.

ON petition to this Court for discretionary review of a decision of the Court of Appeals, 43 N.C. App. 615, 259 S.E. 2d 586 (1979), affirming an order entered by *Battle, J.*, at the 6 September 1978 Session of Superior Court, ORANGE County, dismissing plaintiff's claim.

Plaintiff filed a complaint against defendants in February, 1978, alleging that on or about 9 March 1975, her husband Robert E. Nicholson was admitted to defendant hospital for diagnosis and treatment of suspected kidney stones. X-rays were ordered and made by defendant physician. Plaintiff alleged that as a result of

specific negligent acts of the defendant hospital and defendant physician in carrying out the x-ray procedure, her husband, Robert E. Nicholson, was greatly injured in his mind and body, became forgetful, became weakened physically and was rendered impotent, thereby depriving plaintiff of her conjugal rights. She further alleged that because of these injuries her husband could no longer function as the head of the household and as her marriage partner. She prayed for damages "in excess of $10,000.00."

Defendants answered separately, denying any negligence. They further asserted, pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure, that plaintiff's complaint failed to state a claim upon which relief could be granted.

Plaintiff was served notice of a hearing on a Rule 12(b)(6) motion to be held 18 June 1978. On 6 September 1978, a judge presiding ruled on the motion and dismissed plaintiff's claim with prejudice.

Plaintiff appealed to the Court of Appeals. That court treated her action as one "[seeking] to distinguish an action . . . for loss of conjugal rights from an action . . . for loss of consortium." Unconvinced, the Court of Appeals cited *Hinnant v. Tidewater Power Company*, 189 N.C. 120, 126 S.E. 307 (1925), as controlling and affirmed the trial court.

We allowed plaintiff's petition for discretionary review 6 February 1980.

*Latham, Wood & Balog by Steve A. Balog for plaintiff-appellant.*

*Haywood, Denny & Miller by George W. Miller, Jr., for defendant-appellee Hugh Chatham Memorial Hospital.*

*Henson & Donahue by Perry C. Henson for defendant-appellee Dr. Richard B. Merlo.*

CARLTON, Justice.

Plaintiff presents the sole question whether under the law of North Carolina a wife has a cause of action for loss of consortium resulting from a negligent injury to her husband. The Court of Appeals correctly recognized the historical and common law rule

in North Carolina and answered no. For reasons stated below, we reverse.

I.

At common law, consortium embraced those marital rights a husband had in respect to his wife. 2 R. Lee, *North Carolina Family Law* § 205 (3d ed. 1963); Prosser, *Law of Torts* § 125 (4th ed. 1971); Note: Torts — Recognition of Wife's Right to Husband's Consortium, 47 N.C.L. Rev. 1006 (1969). Precisely what those rights were, however, has been open to various interpretations, *see, e.g.*, Lee, *supra* at § 205 and authority cited therein; Note: The Case of the Lonely Nurse: The Wife's Action for Loss of Consortium, 18 West. Res. L. Rev. 621 (1967), and the term has been defined "sometimes in terms enormously complex as the judges followed the habit of lawyers of never using one word where two may be employed." *Montgomery v. Stephan*, 359 Mich. 33, 35, 101 N.W. 2d 227, 228 (1960). Certainly, at common law the husband's action for loss of his wife's consortium was based on the understanding that his legal obligation to support his wife was balanced by her obligation to serve him. Note: The Case of the Lonely Nurse, *supra* at 622; Harper & Skolnick, *Problems of the Family* 11 (1962). This definition has been amended in other jurisdictions, however, so that the essence of consortium today has become the mutual right of a husband and wife to the society, companionship, comfort and affection of one another. *Hitaffer v. Argonne Company*, 183 F. 2d 811 (D.C. Cir.), *cert. denied*, 340 U.S. 852, 71 S.Ct. 80, 95 L.Ed. 624 (1950); *overruled on other grounds, Smither & Company, Inc. v. Coles*, 242 F. 2d 220, *cert. denied*, 354 U.S. 914, 77 S.Ct. 1299, 1 L.Ed. 2d 1429 (1957). Unquestionably, this society and companionship includes a sexual component. *Cf. Deems v. Western Maryland Railway Co.*, 247 Md. 95, 231 A. 2d 514 (1967) (Consortium includes sexual relations); *Ekalo v. Constructive Service Corporation of America*, 46 N.J. 82, 215 A. 2d 1 (1965) (Compensation for impotent husband is a measure of loss of consortium); Note: 47 N.C.L. Rev. 1006, *supra* (Three most prominent elements in the consortium interest are "services, sexual intercourse and general companionship").

At common law, a husband could sue negligent third parties for loss of his wife's consortium, but a wife had no comparable cause of action. Indeed, at common law, a wife could not even sue

for her own personal injuries without joinder of her husband, *King v. Gates*, 231 N.C. 537, 57 S.E. 2d 765 (1950); *Hipp v. Du-Pont*, 182 N.C. 9, 108 S.E. 318 (1921); Lee, *supra* at § 205. The reason for this inequity was that a wife was regarded as little more than a chattel in the eyes of the law. Only a husband could maintain an action for a wife's injuries and he could do so for the same reason he could maintain action for injury to his horse, his slave or his other property. *Hipp v. DuPont, supra. See also* 3 W. Blackstone, *Commentaries* 143 (Lewis ed. 1897). All were his inferiors; none had capacity in themselves to sue.

The married women's provision in the North Carolina Constitution of 1868, Article X, section 6, abolished this unrealistic legal concept of married women, and provided that a wife's property no longer automatically became that of her husband upon marriage. *Hipp v. DuPont, supra.* The legislature further clarified a wife's legal position in 1913 by enacting the precursor to our present G.S. 52-4. That statute provided that any damage for her own personal injuries could be recovered by a wife suing alone. Lee, *supra* at § 205.

Even after passage of this legislation, it was clear that a husband could continue to maintain an action for loss of his wife's consortium, *see, e.g., Hipp v. DuPont, supra; Bailey v. Long*, 172 N.C. 661, 90 S.E. 809 (1916). The question remained open, however, whether the married women's legislation in North Carolina gave a wife the equal right to sue for loss of her husband's consortium.

In *Hipp v. DuPont, supra*, this Court first considered the question and answered in the affirmative. There, plaintiff's husband sued and lost in a Virginia court for injuries he received as a result of his employment at defendant's chemical plant in Hopewell, Virginia. The family subsequently moved and plaintiff sued in North Carolina to recover for expenses incurred in maintaining her husband, for services performed in caring for her husband, for loss of his support and maintenance, for loss of his consortium and for her own mental anguish.

The Court in *Hipp* held that as a husband could continue to sue for loss of his wife's consortium, then by virtue of the married women's legislation and by virtue of logic and fairness, the plain-

tiff wife could maintain an action in her own behalf for loss of her husband's consortium.

This view did not last long. Four years later in *Hinnant v. Tidewater Power Company*, 189 N.C. 120, 126 S.E. 307 (1925), the Court expressly overruled *Hipp*, noting as it did so, that it joined the weight of authority in other jurisdictions.

In *Hinnant*, plaintiff's husband was injured by a train crash at 6:30 a.m. and died the following morning at 3:00 a.m. Plaintiff wife sued for mental shock and anguish, loss of support, and loss of her husband's "society, love and affection, his counsel and advice, his tender ministration in sickness, and the many comforts and pleasures which the marital relationship brings to those who are congenial with each other." 189 N.C. at 121, 126 S.E. at 308.

The judge instructed the jury that among other things, they could allow damages in the amount of fair compensation for plaintiff's loss of the society and companionship of her husband suffered between the time of his injury and the time of his death.

The jury awarded damages to plaintiff for loss of consortium. On appeal, this Court reversed the award and expressly overruled *Hipp v. DuPont*. In holding that a wife could no longer sue for loss of her husband's consortium, the Court gave four grounds for its decision. *First*, the Court emphasized that historically the wife had no action for consortium. The inference was that the married women's legislation had not changed that historical inability. *Second*, the Court emphasized that consortium included a predominant factor of service and that any attempt to separate that service element from society, companionship and affection was impossible. Thus, it held that a husband's right to recover loss of his wife's consortium was in actuality a right to recover for loss of her services. As the married women's acts had given the wife a right to recover for loss of her services in her own name, nothing compensable remained of a right to consortium. The inference of such a holding was that damages from loss of society and companionship rather than loss of service would be impossible to measure.

*Third*, the Court held that the wife's damages were too remote a consequence of a defendant's negligent injury of her husband to have been proximately caused by that injury. The

Court apparently feared expansion of the cause of action so that unrelated third parties such as children, parents and employers would attempt to recover.

*Fourth*, the Court was concerned that to allow a wife's action for loss of consortium, particularly when the main component of that action was compensation for lost service, would allow double recovery. A husband, suing in his own behalf, would recover for loss of his services while a wife, suing for loss of consortium, would recover for loss of the selfsame services.

After *Hinnant*, a wife in North Carolina could not maintain an action for loss of consortium due to the negligence of third parties. The common law right of a husband to maintain such an action remained intact. That inequity was remedied in *Helmstetler v. Duke Power Company*, 224 N.C. 821, 32 S.E. 2d 611 (1945). There plaintiff husband sued a defendant whose bus had seriously injured his wife. The Court affirmed summary judgment for defendant citing *Hinnant* and reasoning that because a wife had no cause of action for loss of consortium, a husband had no such cause of action either. Each spouse stood on a parity with each other and could recover for injuries done to each individually. Neither, however, could recover for loss of consortium due to negligent injuries to the other spouse.

[2]  Such has been the law in this jurisdiction since 1945. For the reasons stated below, however, we no longer consider this sound policy and expressly overrule *Hinnant* and *Helmstetler*.

## II.

A close reading of both *Hinnant* and *Helmstetler* in the context of North Carolina law reveals several inconsistencies and anomalies which one leading case has termed "legalistic gymnastics." *Hitaffer v. Argonne Company, supra* at 816.

Taken together, *Hinnant* and *Helmstetler* strip both spouses of a right to recover for what can be a very real injury to the marital partnership. Such denuding contradicts the policy of modern law to expand liability in an effort to afford decent compensation as a measure to those injured by the wrongful conduct of others. *Diaz v. Eli Lilly and Company*, 364 Mass. 153, 302 N.E. 2d 555 (1973); *Ekalo v. Constructive Service Corporation, supra*. The intent behind such a policy is presumptively to allow

recourse for a definite injury to a legitimate interest, *Millington v. Southeastern Elevator Company*, 22 N.Y. 2d 498, 293 N.Y.S. 2d 305, 239 N.E. 2d 897 (1968). *See also Deems v. Western Maryland Railway Company, supra.* Thus to reason, as the *Helmstetler* Court did, that the action of the physically injured spouse alone is adequate compensation ignores the very real fact that the "uninjured" spouse's loss of conjugal fellowship deprives that spouse of sexual gratification and the possibility of children. Such deprivation can transform "a loving wife into a lonely nurse." *Ekalo v. Construction Services, supra* at 84, 215 A. 2d at 2.

Furthermore, the denial of a right to loss of consortium in cases such as this one is inconsistent with the rule in this jurisdiction that either spouse may sue for loss of consortium due to intentional torts by third parties. *See, e.g., Bishop v. Glazener*, 245 N.C. 592, 96 S.E. 2d 870 (1957) (Husband); *Knighten v. McClain*, 227 N.C. 682, 44 S.E. 2d 79 (1947) (Wife). True, intentional invasion of marital relationships can create tragic unhappiness and may all too frequently precipitate divorce. While lamentable in its result, such an intentional act, however, does not give rise to the awesome permanent deprivation one spouse faces when his or her marital partner is rendered a spectre of a former self. *See, e.g., Ekalo v. Constructive Service, supra.* We cannot believe total deprivation of a right of action, even though it extends to both husband and wife, is thus consistent with either our own law or sound public policy. *Accord: Deems v. Western Maryland Railway Co., supra; Ekalo v. Constructive Service Corp., supra.* For this reason alone, reversal of *Helmstetler* seems warranted.

The basis for our change, however, does not rest here. A close reading of *Hinnant*, the case which began eliminating a cause of action for loss of consortium, indicates its reasoning is suspect on at least four grounds.

*First*, to hold by inference, as *Hinnant* seems to, that the married women's legislation does not create a right in the wife equal to that of her husband to sue for loss of consortium ignores the very purpose for which these acts were passed — to remove common law disabilities against women and to equalize the rights of husbands and wives. R. Lee, *supra* at § 108. Indeed, this reasoning does not account for the holding of this Court that the married women's legislation gives a wife a right to sue for

damages for loss of consortium due to intentional injuries. *See, e.g., Knighten v. McClain, supra.*

*Second,* the *Hinnant* Court's presumption that service provides the totality of an action for consortium is no longer sound legal reasoning. In *Hinnant,* the Court itself acknowledged that in actions for intentional interference with consortium, "the loss of conjugal society and affection . . . stand[s] out and [is] emphasized as the preeminent and possibly sole basis of recovery." 189 N.C. at 123, 126 S.E. at 309, quoting *Marri v. Stamford Street Railroad Company,* 84 Conn. 9, 78 A. 582 (1911). For the Court to conclude nevertheless that loss of service provided the totality of the measure of damages for loss of consortium illogically ignored this definition of consortium provided by cases involving intentional torts.

Nor was this concept of consortium necessarily historically accurate. The vast majority of commentators today either assert that consortium at common law included several severable interests, only one of which was service, *see, e.g.,* Lippman, The Breakdown of Consortium, 30 Colum. L. Rev. 651 (1930), or conclude that consortium is primarily limited to society, aid and affection. *Hitaffer v. Argonne, supra,* and authority cited therein; Note: The Case of The Lonely Nurse, *supra.*

[1] Thus, while we recognize that consortium is difficult to define, we believe the better view is that it embraces service, society, companionship, sexual gratification and affection, and we so hold today. We do so in recognition of the many tangible and intangible benefits resulting from the loving bond of the marital relationship.

*Third,* the *Hinnant* Court's inference that damages in a consortium action are too remote to measure, again is no longer sound legal principle. The Court in *Hinnant* quoted *Marri v. Stamford Street Railroad Company, supra,* to the effect that where the injury was physical only to one spouse, there had been no actual injury to the affectionate feelings between the spouses. Common sense tells us this is not true. Indeed, experience with the North Carolina wrongful death statute, G.S. 28A-18-2(b), which does allow compensation for loss of consortium, indicates trial courts and juries recognize and can measure such damage to society, affection and companionship. Certainly the experience of other

jurisdictions in awarding damages for loss of a husband's consortium has developed a respectable factoring of measure of loss. *See, e.g., Annot.,* 74 A.L.R. 3d 805 (1976) and cases cited therein.

Finally, the *Hinnant* Court's fears of proximate causation and double recovery, while in themselves sound concerns, could have been dealt with in a fashion less draconian than totally denying a cause of action for loss of consortium. If a loss of consortium is seen not only as a loss of service but as a loss of legal sexual intercourse and general companionship, society and affection as well, by definition any damage to consortium is limited to the legal marital partner of the injured.[1] Strangers to the marriage partnership cannot maintain such an action, and there is no need to worry about extension of proximate causation to parties far removed from the injury.

In a similar vein, the prospect of double recovery can be virtually eliminated by limiting the action primarily to damage measures other than loss of services or support so that "[s]imple mathematics will suffice to set the proper *quantum* [of damages]." *Hitaffer v. Argonne Co., supra* at 819.

A far sounder way to avoid double recovery in a suit against negligent third parties, however, is to compel joinder of one spouse's action for loss of consortium with the other spouse's action for personal injury. This solution is not unique; at least seven other American jurisdictions compel such joinder: *Schreiner v. Fruit,* 519 P. 2d 462 (Alaska 1974); *Deems v. Western Maryland Railway, supra; Diaz v. Eli Lilly, supra; Ekalo v. Constructive Service, supra; Millington v. Southeastern Elevator, supra; Jones v. Slaughter,* 54 Mich. App. 120, 220 N.W. 2d 63 (1974); *Moore v. Baker,* 25 Ohio Misc. 140, 54 Ohio Ops 2d 139, 266 N.E. 2d 593 (1970).

The reasons for requiring joinder are sound. Not only does joinder avoid the problem of double recovery, it recognizes that, in a very real sense, the injury involved is to the marriage as an entity. "[B]ecause these marital interests [in sexual congress and progeny] are in reality so interdependent, because injury to these

---

1. Because G.S. 14-184 makes fornication and adultery a misdemeanor in this State, the only sexual relationship the law protects is that between married partners.

interests is so essentially incapable of separate evaluation as to the husband and wife . . . the conception of the joint action seems . . . a fair and practical juridical development." *Deems v. Western Maryland Railway, supra* at 109, 231 A. 2d at 522.

We no longer believe the reasoning behind *Hinnant* and *Helmstetler* is sound. Defendants here, however, urge that if we are tempted to an "activist" role in dealing with the anomalies inherent in those decisions, we should rely on legislative action rather than forsake the "salutory doctrine of *stare decisis*." The argument overlooks the fact that this entire area of the law has been developed by judicial decree. This Court created a wife's right to sue for loss of consortium due to negligence in *Hipp*, took that right away from the wife in *Hinnant* and eliminated the common law cause of action for the husband in *Helmstetler*. In view of such a history of judicial activity, we do not believe legislative fiat is necessary. We therefore overrule the holdings in *Hinnant* and *Helmstetler* and restore to both spouses a cause of action for loss of consortium due to the negligence of third parties.

In so holding, this jurisdiction once again returns to the mainstream of American legal thought. When this Court first decided *Hinnant* in 1925, it did so partly in response to a trend in other jurisdictions eliminating the cause of action. That trend has changed. Beginning in 1950 with *Hitaffer v. Argonne Company, supra,* 37 American jurisdictions, including 35 states, now recognize the right of either spouse to sue for loss of consortium due to the negligence of third parties. *See, Annot.,* 36 A.L.R. 3d 900 (1971 and Supp. 1979) and cases cited therein.

[2]  For all these reasons, we hold that a spouse may maintain a cause of action for loss of consortium due to the negligent actions of third parties so long as that action for loss of consortium is joined with any suit the other spouse may have instituted to recover for his or her personal injuries.

The decision of the Court of Appeals is reversed, and this case is remanded to that court with instructions to remand to the trial court for further proceedings consistent with this opinion.

Reversed and remanded.