JAMES L. GOBLE AND WIFE, LINDA GOBLE v. BOBBY N. HELMS AND WINN-DIXIE CHARLOTTE, INC.

No. 8224SC1082

(Filed 18 October 1983)

1. Evidence § 49.2— hypothetical question—omission of relevant facts not error

A hypothetical question to plaintiff's medical expert was not improper because of the omission of relevant facts where the facts omitted did not go to the essence of the case so as to present an obviously incomplete and unreliable basis for the expert's opinion, and where defendants were given an opportunity to cross-examine the witness and supply any additional facts they felt were necessary.

2. Evidence § 49.3— improper hypothetical question—waiver of objection

Even if a hypothetical question asked plaintiff's medical expert improperly assumed the answer to the question as part of the statement of facts, defendants waived objection to the question when evidence of the same import was thereafter admitted without objection.

### 3. Evidence § 44— non-expert opinion testimony—ability to relax

In an action to recover for personal injuries to plaintiff husband and loss of consortium by plaintiff wife, plaintiff wife was properly permitted to give non-expert opinion testimony that "it's very hard for [plaintiff husband] to relax now, like he used to," and that "sometimes we just can't have sexual relations because of that," since plaintiff husband's ability to relax was an aspect of his health as to which opinion testimony by a non-expert was admissible, and plaintiff wife, by virtue of observation and experience, was well qualified to offer her opinion.

### 4. Evidence § 44— numbness of plaintiff's face—non-expert opinion testimony

The trial court properly permitted plaintiff husband's former employer to testify that plaintiff husband "was stiff, he was moving and also in his face when he would talk to me he was talking out of one side of his mouth, because one side of his mouth or face was numb," since nonexpert testimony as to a person's physical appearance is permissible if the witness had an opportunity to observe the person, and the testimony in question was merely a shorthand statement as to an observed physical fact.

### 5. Damages § 13.2— evidence of lost future earnings and promotions

In an action to recover for injuries received in an automobile-truck accident, the trial court did not err in admitting evidence of plaintiff's prospects regarding future earnings and promotions with the company which employed him when the collision occurred.

### 6. Evidence § 50.1; Witnesses § 9— medical testimony—opening door by cross-examination

By cross-examining plaintiffs' medical expert in several respects relating to injuries to the brain, defendants opened the door to a question propounded by plaintiffs on redirect examination of the witness as to whether an observation of one pupil becoming larger and one smaller in a person who has been in an accident indicates a brain injury.

### 7. Damages § 16.1— instruction on damages for disfigurement—sufficiency of evidence

Plaintiff's evidence showed a spoiling or blemishing of plaintiff's mouth and facial features which justified the trial court's instruction on damages for disfigurement where plaintiff testified that he suffered numbness to much of his body and a cramping or drawing in his face, and another witness testified that, when plaintiff talked to him, "he was talking out of the side of his mouth."

### 8. Damages § 17.4— future medical expenses

The evidence in a personal injury action supported the trial court's instruction that the jury could award damages for medical expenses which plaintiff would pay or incur in the future as a proximate result of defendants' negligence where plaintiff testified that he continued to go to the doctor occasionally to obtain a muscle relaxant prescription; plaintiff also testified that he had averaged seeing the doctor once a month since the collision in question, and that he continued to wear a cervical collar to relieve tension or pain in his

neck; both plaintiff and his doctor testified to the possibility of plaintiff's going to a university medical center for further evaluation; and plaintiff introduced statements of account showing various medical and pharmaceutical expenses incurred as a result of the collision, from which the jury could reasonably estimate anticipated expenses.

**9. Damages § 17.1— loss of use of part of body—sufficient evidence of causation**

In an action to recover for personal injuries received in an automobile-truck collision, there was sufficient evidence of causation, medical and otherwise, to merit the trial court's instruction that the jury could award damages to plaintiff for loss of use of a part of his body due to numbness and weakness where a medical expert testified that plaintiff had reached maximum improvement; several witnesses testified to plaintiff's physical strength before and after the collision, indicating a diminution therein; plaintiff testified that before the collision he had never suffered from numbness in his body, and that after the collision he had numbness on his left side, in his hand, arm, chest and side, a cramping or drawing in his face, and a pain in his neck; the medical expert testified that on pin prick plaintiff had some decreased sensation on the left side and that plaintiff had a slight weakness in his left hand; and the medical expert also testified that he thought plaintiff's broken neck and other injuries could have been received in the collision.

**10. Appeal and Error § 50.3; Trial § 6— erroneous instruction on stipulation—error cured by further instructions**

In a personal injury action in which defendants stipulated that their negligence had caused the collision in question, the court's erroneous instruction that defendants had admitted that their negligence was the proximate cause of any injury plaintiff might have received from the accident was cured by the court's further instructions which clearly informed the jury that defendants had stipulated only to the issue of liability and not that plaintiff's condition at trial was caused by the accident.

**11. Husband and Wife § 9— loss of consortium—sufficiency of evidence**

The evidence was sufficient to support the trial court's instructions as to the elements of plaintiff wife's loss of consortium for which the jury could award damages where plaintiff wife testified that, prior to the collision in question, plaintiff husband was very strong and healthy and did a substantial amount of work around the plaintiffs' home and farm, and that since the collision she "hadn't seen him do anything"; that prior to the collision he was "slow tempered" but that thereafter he had been "very irritable and everything seems to just really get on his nerves"; that prior to the collision he was in very good spirits, with a happy and hopeful mental attitude, but that thereafter he was at times very discouraged and listless and did not have the same zest for life; that prior to the collision they got along very well and had a very good relationship, but that thereafter it had been very difficult for him to relax, and they sometimes could not have sexual relations because of that; and that she could not say that she loved him less subsequent to the accident but that "she loved him differently." Furthermore, medical testimony that plaintiff husband had reached maximum improvement and was "going to be the way he

is now" sufficed to justify the court's instruction on plaintiff wife's entitlement to compensation for future loss of consortium.

**12. Husband and Wife § 9— loss of consortium — denial of directed verdict — denial of judgment n.o.v.**

The trial court did not err in denying defendants' motions for directed verdict and judgment notwithstanding the verdict on the loss of consortium issue where there was substantial evidence of diminution of various aspects of the marital relationship which merited submission of this issue to the jury.

**13. Rules of Civil Procedure § 59— denial of motion to set aside verdicts as excessive**

The trial court did not abuse its discretion in refusing to set aside on grounds of excessiveness a $335,000.00 personal injury verdict for plaintiff husband and a $60,000.00 loss of consortium verdict for plaintiff wife.

APPEAL by defendants from *Allen, Judge.* Judgment entered 10 June 1982 in Superior Court, AVERY County. Heard in the Court of Appeals 31 August 1983.

Plaintiffs brought this action for personal injuries to plaintiff-husband, and loss of consortium by plaintiff-wife, arising from the collision of a tractor-trailer, owned by defendant Winn-Dixie and driven by defendant Helms, with an automobile driven by plaintiff-husband. Defendants stipulated that Helms was acting within the course and scope of his employment with Winn-Dixie at the time of the collision, and that his negligence caused the collision. A trial on the issue of damages resulted in a $335,000 verdict for plaintiff-husband and a $60,000 verdict for plaintiff-wife.

From a judgment entered on the verdicts, defendants appeal.

*Byrd, Byrd, Ervin, Blanton, Whisnant & McMahon, P.A., by Robert B. Byrd and Sam J. Ervin, IV, for plaintiff appellees.*

*Morris, Golding and Phillips, by James N. Golding, for defendant appellants.*

WHICHARD, Judge.

EVIDENTIARY RULINGS

[1]   Defendants contend the court erred in overruling their objection to a lengthy hypothetical question to plaintiffs' medical witness inquiring "whether [plaintiff-husband's] broken neck and other injuries described could or might have been received in the

accident?" They argue that the question failed to include relevant facts and included irrelevant ones.

When this case was tried, there was no requirement that expert testimony be in response to a hypothetical question. *See* G.S. 8-58.12 (1981). When used, however, "a hypothetical question which omits any reference to a fact which goes to the essence of the case and therefore presents a state of facts so incomplete that an opinion based on it would be obviously unreliable is improper, and the expert witness's answer will be excluded." *Dean v. Coach Co.*, 287 N.C. 515, 518, 215 S.E. 2d 89, 91 (1975).

The facts allegedly omitted here, while having some bearing on plaintiff-husband's condition, did not go to the essence of the case so as to present an obviously incomplete and unreliable basis for the expert's opinion. In such situations it is incumbent upon the adversary, if concerned that omitted facts might elicit a different opinion, to supply them on cross-examination. *Dean, supra,* 287 N.C. at 520, 215 S.E. 2d at 92; *see also Rutledge v. Tultex Corp.*, 308 N.C. 85, 91, 301 S.E. 2d 359, 364 (1983); *Lee v. Tire Co.*, 40 N.C. App. 150, 154-55, 252 S.E. 2d 252, 255-56, *disc. rev. denied,* 297 N.C. 454, 256 S.E. 2d 807 (1979). Defendants here were given an opportunity to cross-examine the witness and supply any additional facts they felt were necessary. Thus, the omission does not require a finding of error.

Nor is the allegedly irrelevant matter, which related to plaintiff-husband's employment and absentee record, sufficiently prejudicial to constitute grounds for a new trial. For examples of irrelevant matter found to be prejudicial, see *Ingram v. Mc-Cuiston*, 261 N.C. 392, 134 S.E. 2d 705 (1964); *Lindsey v. The Clinic for Women*, 40 N.C. App. 456, 253 S.E. 2d 304 (1979). We find no merit to this contention.

[2] Defendants contend the court erred in overruling their objection to the following hypothetical question posed to plaintiffs' medical witness:

Doctor, if the Jury should find as facts from the greater weight of the evidence that prior to the time that you saw [plaintiff-husband] on May 5, 1980, that he had been involved in a tractor-trailer accident with a head-on collision, that as a result of that he blacked out or lost consciousness, was not

able to stand and had to hold on to a car for support, and was placed on a pallet and transported to the Emergency Room where you saw him, if the Jury should find those things as facts from the greater weight of the evidence in this case, do you have an opinion as to the cause of the unconsciousness or black out condition of this man?

They argue that the phrase "that as a result of that he blacked out or lost consciousness" assumes the answer to the question as part of the statement of facts.

A hypothetical question "should [not] assume those facts sought to be established." *Ryder v. Benfield,* 43 N.C. App. 278, 286, 258 S.E. 2d 849, 855 (1979). It is evident that the words "after that" or "immediately thereafter," rather than "as a result of that," would have more aptly stated the question.

"An objection is waived [, however,] when evidence of the same import is admitted without objection." *Mills, Inc. v. Terminal, Inc.,* 273 N.C. 519, 532, 160 S.E. 2d 735, 745 (1968). Here the medical witness testified, without objection, that a direct injury to the head or brain could cause unconsciousness. Plaintiff-husband testified that he had "blacked out" following the accident. On recross counsel for defendants asked the medical witness, "[D]id [plaintiff-husband] have a concussion caused by this accident?"; and they received an affirmative answer.

In light of this and other evidence, we hold defendants' objection to the hypothetical question waived, and deem harmless any error from failure to sustain it.

[3] Defendants contend the court erred in overruling their objection to, and denying their motion to strike, the following testimony by plaintiff-wife:

Q. Will you very frankly describe your sexual compatibility now with your husband as compared before this accident?

. . .

A. Well, it's very hard for [him] to relax now, you know, like he used to. And well sometimes we just can't have sexual relations because of that, I believe.

They argue that there was no medical evidence relating to plaintiff-husband's inability to engage in sexual activities, that the pathological cause of an ailment is a scientific question, and that plaintiff-wife's testimony "provides a lay opinion" as to the cause of plaintiff-husband's inability to relax and its relation to his sexual capacities.

While expert opinion on this subject would have been admissible, *see* G.S. 8-58.13, 1 H. Brandis, *North Carolina Evidence* § 132, at 511 (1982), it was not required. "The state of a person's health, a person's ability to work or engage in activities, a person's physical appearance and sleeping habits, among other things, are proper subjects of opinion testimony by non-experts." *Craven v. Chambers*, 56 N.C. App. 151, 157, 287 S.E. 2d 905, 909 (1982). Thus, when a witness is "able to describe the state of [a] plaintiff's health after the accident and to compare it with that existing before the accident," exclusion of the witness' testimony is error. *Id.* at 157-58, 287 S.E. 2d at 909; *see also Kenney v. Kenney*, 15 N.C. App. 665, 669, 190 S.E. 2d 650, 653 (1972); 1 H. Brandis, *supra*, § 129, at 498.

Plaintiff-husband's ability to relax was an aspect of his health as to which opinion testimony by a non-expert was admissible. Plaintiff-wife, by virtue of observation and experience, was well qualified to offer her opinion. We thus find defendants' contention without merit.

[4] Defendants similarly contend the court erred in denying their motion to strike testimony by plaintiff-husband's former employer that plaintiff-husband "was stiff, he was moving and also in his face when he would talk to me he was talking out of one side of his mouth, because one side of his mouth or face was numb." We find this contention equally without merit. As stated above, this is an area where non-expert testimony is permissible as long as the witness had an opportunity to observe the plaintiff. *Craven v. Chambers, supra.* The witness testified to repeated opportunities to observe plaintiff-husband in his employment situation over a four-month period before the accident and at least twice after the accident. His testimony was merely a shorthand statement as to an observed physical fact, and as such its admission was not error. *See* 1 H. Brandis, *supra*, § 125. Assuming error, *arguendo*, it was clearly non-prejudicial in view of substantial

other evidence regarding plaintiff-husband's condition of numbness.

[5] Defendants contend the court erred in admitting evidence of plaintiff-husband's prospects regarding future earnings and promotions with the company which employed him when the collision occurred. This evidence was pertinent to a determination of the extent 'of plaintiff-husband's damages, however, and "great latitude" is allowed in the introduction of such evidence. *See Smith v. Corsat,* 260 N.C. 92, 95-96, 131 S.E. 2d 894, 897 (1963). The right of cross-examination provides the opposing party opportunity to challenge estimates of this nature, *see Peterson v. Johnson,* 28 N.C. App. 527, 531, 221 S.E. 2d 920, 924 (1976), and defendants exercised that right only sparingly. We find no error in the admission of this evidence.

[6] Defendants contend the court erred in admitting, over objection, the following testimony on redirect examination of the medical witness:

> Q. If after a person has been involved in an accident and has a broken neck, if later there is an observation of one pupil becoming larger and one smaller at the same time, that indicates to you as a medical doctor a brain injury?
>
> . . .
>
> A. Yes, I think it would indicate that there is something intracranial; right, inside of the skull.

Defendants had cross-examined this witness in several respects relating to injuries to the brain. They thus "opened the door to the question propounded by the plaintiff[s] on re-direct examination," *Johnson v. Massengill,* 280 N.C. 376, 383, 186 S.E. 2d 168, 174 (1972), entitling plaintiffs to examine the witness regarding such matter. *See* 1 H. Brandis, *supra,* § 36. We find this contention without merit.

Defendants' final evidentiary contention is that the court erred in admitting certain evidence which it subsequently withdrew and instructed the jury not to consider. "Ordinarily it is presumed that the jury followed [the court's] instruction and the admission is not held to be reversible error unless it is apparent from the entire record that the prejudicial effect of [the evidence]

was not removed from the minds of the jury by the court's admonition." *Smith v. Perdue*, 258 N.C. 686, 690, 129 S.E. 2d 293, 297 (1963); *see also Driver v. Edwards*, 251 N.C. 650, 112 S.E. 2d 98 (1960). We have examined the matters complained of in light of the entire record, and we perceive no prejudicial effect warranting a new trial.

## INSTRUCTIONS

[7]  To instruct on an element of damages, absent evidence thereof, is error. *E.g., Brown v. Neal*, 283 N.C. 604, 613, 197 S.E. 2d 505, 511 (1973). Defendants contend the court erred in instructing that the jury could award plaintiff-husband damages for disfigurement when there was no evidence thereof. Plaintiff-husband testified, however, to numbness in much of his body and "a cramping or drawing . . . in [his] face [which he could feel] just like somebody closing their hand on it." Another witness testified that when plaintiff-husband talked to him, "he was talking out of one side of his mouth."

To disfigure is to spoil or blemish the appearance or shape of something. *See* American Heritage Dictionary 377 (New College Ed. 1978). The foregoing evidence showed a spoiling or blemishing of plaintiff-husband's mouth and facial features which justified an instruction on disfigurement.

[8]  Defendants contend there was no evidence to support the instruction that the jury could award damages for medical expenses which plaintiff-husband would pay or incur in the future as a proximate result of their negligence. There was testimony, however, from a medical expert, that plaintiff-husband had reached maximum improvement. The witness stated: "I think he has recovered. I think he is going to be the way he is now. . . . I think he has improved to what degree he's going to improve. . . . I think he most probably will stay at the level he is at now." He also stated, though, that plaintiff-husband "could receive treatment for his present condition." Plaintiff-husband testified that he continued to go to the doctor occasionally to obtain a muscle relaxant prescription. He also testified that he had averaged seeing the doctor once a month since the collision, and that he continued to wear a cervical collar to relieve tension or pain in his neck. Both plaintiff-husband and his doctor testified to the

possibility of plaintiff-husband's going to a university medical center for further evaluation. Finally, plaintiff-husband introduced statements of account showing various medical and pharmaceutical expenses incurred as a result of the collision, from which the jury could reasonably estimate anticipated expenses.

It is proper to instruct the jury to compensate plaintiff for prospective damages "where there is sufficient evidence of pain, disability or other injury continuing into the future to justify consideration thereof." *Brown, supra,* 283 N.C. at 613, 197 S.E. 2d at 510-11. The foregoing evidence sufficed for that purpose, and the court did not err in the instruction complained of.

[9] Defendants contend the court erred in instructing that the jury could award damages to plaintiff-husband for loss of use of a part of his body due to numbness and weakness. Again, the medical expert testified that plaintiff-husband had reached maximum improvement. Several witnesses testified to his physical strength before and after the collision, indicating a diminution therein. Plaintiff-husband testified that before the collision he had never suffered from numbness in his body, and that after the collision he had "numbness in [his] body from right the center all the way down." He indicated that this began "at the bottom of [his] foot." He testified that "all the way up there's numbness on this left side in my hand, my arm, my chest and this side . . . you can touch it and touch this one it's like touching two different people." He also testified to "a cramping or drawing . . . in [his] face" and a pain in his neck. The medical expert testified that "on pin prick [plaintiff-husband had] some decrease[d] sensation . . . on the left side." He also testified to a slight weakness in plaintiff-husband's left hand.

The foregoing evidence sufficed to merit the instruction complained of. Defendants' argument that the evidence was insufficient to establish a causal connection between the collision and these conditions is without merit. Plaintiff-husband testified that he had not experienced these conditions before the collision, and that he had since. This testimony established "facts in evidence . . . such that any layman of average intelligence and experience would know what caused the injuries complained of." *Gillikin v. Burbage,* 263 N.C. 317, 325, 139 S.E. 2d 753, 760 (1965). Medical evidence to establish the causal connection thus was not required. *Id.*

Assuming, *arguendo*, that medical evidence was necessary to establish causal connection, there was testimony from the medical expert that he thought the broken neck and other injuries could have been received in the accident. We have herein found this evidence sufficiently "based on . . . reasonable probabilities" rather than "merely speculative and mere possibility," and thus have declined to hold its admission, which is in the exercise of the trial court's discretion, erroneous. *See Lockwood v. McCaskill,* 262 N.C. 663, 668-69, 138 S.E. 2d 541, 545-46 (1964). There thus was sufficient evidence on causation, medical and otherwise, to merit the instruction.

Defendants contend the court failed in its instructions to comply with G.S. 1A-1, Rule 51(a), which provides:

> In charging the jury . . . [the] judge . . . shall declare and explain the law arising on the evidence . . . . The judge shall not be required to state such evidence except to the extent necessary to explain the application of the law thereto; provided, the judge shall give equal stress to the contentions of the various parties.

The gravamen of their argument is that the court reviewed evidence favorable to plaintiffs, but none favorable to defendants.

Defendants introduced no evidence, but relied on cross-examination of plaintiffs' witnesses to establish evidence favorable to them. The court instructed the jury that this was the case, and instructed that it should consider in its deliberations plaintiffs' evidence which it considered favorable to defendants. The court chose not to summarize the parties' contentions, as it had the right to do. *Board of Transportation v. Rand,* 299 N.C. 476, 483, 263 S.E. 2d 565, 570 (1980); *Rector v. James,* 41 N.C. App. 267, 271, 254 S.E. 2d 633, 637 (1979).

We perceive no basis in the summation given, or omissions therein, for awarding a new trial. Moreover, defendants did not object to the summation at trial, and thus cannot do so now. N.C. R. App. P. 10(b)(2).

[10] Defendants contend the court erred in its instructions regarding the stipulation that their negligence had caused the collision. Early in its instructions the court stated that defendants had "admitted that [their] negligence . . . was the proximate

cause of any injury that the Plaintiff might have received from this accident." Counsel for defendants immediately requested and received permission to approach the bench. The court then stated:

Now, Members of the Jury, I may have misstated that in some respect that the negligence of the Defendants was the proximate cause of the accident that was involved out there and not necessarily the proximate cause of the injury, any injuries received, but the proximate cause of the accident that was had out there on the highway.

Counsel for defendants made no further objections or requests at that point, but at the end of the charge again objected to the instructions with respect to the stipulation. The court then further instructed as follows:

Members of the Jury, paragraph number twelve of the stipulation . . . reads as follows:

The Defendants will concede the issue of liability and admit liability in this case with respect to the allegations of negligence and will waive presenting to the Jury any issue concerning the issue of liability. That the negligence of the Defendants was the proximate cause of the motor vehicle collision. There is no stipulation that the Plaintiff's present condition was caused by the accident.

Counsel for defendants made no further objections or requests.

Defendants argue that the foregoing constitutes conflicting instructions on a material point, and thus requires a new trial. *See Barber v. Heeden*, 265 N.C. 682, 686, 144 S.E. 2d 886, 889 (1965); *Kinney v. Goley*, 4 N.C. App. 325, 332, 167 S.E. 2d 97, 102 (1969). It has long been held, however, that where the court inadvertently makes an error and expressly corrects it before the jury retires, the error is rendered harmless. *See Barnes v. House*, 253 N.C. 444, 451-52, 117 S.E. 2d 265, 270 (1960); *Wyatt v. Coach Co.*, 229 N.C. 340, 342, 49 S.E. 2d 650, 652 (1948). Further, the clear purpose of Rule 10(b)(2) of the Rules of Appellate Procedure, which makes objection to portions of the charge before the jury retires a prerequisite to assigning error thereto, was to avoid the necessity of retrials by correction of errors prior to jury deliberation. The instructions here served that purpose. The final instruction clearly informed the jury that defendants had stipulated only

to the issue of liability, and not that plaintiff-husband's condition at trial was caused by the accident. We thus find this contention without merit.

[11]  Defendants' final contention regarding the instructions is that the court erred in instructing on plaintiff-wife's loss of consortium. The pertinent part of the instruction complained of was as follows:

> [Plaintiff-wife] is entitled to recover fair compensation for the actual loss of marital services, society, affection, companionship or sexual relations of her husband, which she [i]ncurred as a proximate result of the Defendant[']s negligence.
>
> . . .
>
> You are instructed to limit your consideration of damages strictly to fair compensation for [plaintiff-wife's] loss of marital services, of society, affection, companionship, sexual relations.
>
> . . .
>
> [Plaintiff-wife] is also entitled to fair compensation [for] any future loss of consortium proximately resulting from the Defendants['] negligence which will occur during [her] marriage to her husband. This means that you must award prospective damages and that recovery is limited to the shorter of the two life expectancies of [plaintiff-wife] and her husband.

Our Supreme Court recently re-established a cause of action for loss of consortium in this jurisdiction. *Nicholson v. Hospital,* 300 N.C. 295, 266 S.E. 2d 818 (1980). While recognizing "that consortium is difficult to define," it stated that "it embraces service, society, companionship, sexual gratification and affection." *Id.* at 302, 266 S.E. 2d at 822. It did so "in recognition of the many tangible and intangible benefits resulting from the loving bond of the marital relationship." *Id.; see* N.C. Pattern Jury Instructions-Civil §§ 810.80, 810.85 (1981); 41 C.J.S., Husband & Wife § 11; 41 Am. Jur. 2d, Husband & Wife §§ 448-50; Annot., 74 A.L.R. 3d 805 (1976).

The court's instructions followed, almost verbatim, the language of *Nicholson, supra.* Defendants do not contend other-

wise. Their argument is that there was no evidence from which the jury "could find injury, loss or damage to or on any of these elements of consortium," and that there was no evidence from which the jury could find "that any of these elements individually or collectively would continue to exist in the future."

Plaintiff-wife, however, testified that prior to the collision plaintiff-husband was very strong and healthy and did a substantial amount of work around the parties' home and farm, and that since the collision she "[hadn't] seen him do anything"; that prior to the collision he was "slow tempered," but that thereafter he had been "very irritable and everything seems to just really get on his nerves"; and that prior to the collision he was in very good spirits, with a happy and hopeful mental attitude, but that thereafter he was at times very discouraged and listless and did not have the same zest for life. She testified that prior to the collision they got along very well, were very much in love, and had a very good relationship; but that thereafter it had been very difficult for him to relax, and they sometimes could not have sexual relations because of that. She acknowledged plaintiff-husband's testimony that prior to the collision they had intercourse several times a month, but thereafter "[s]omething like" only once or twice a month. She could not say that she loved him less subsequent to the accident, but she did say that she "love[d] him differently."

The foregoing and other evidence clearly sufficed to establish a demonstrable diminution in plaintiff-husband's capacity to render service to plaintiff-wife. It also established a reduction in the quality of his general society and companionship, and in his ability to provide sexual gratification and affection. It thus sufficed to support the instruction as to the elements of plaintiff-wife's loss for which the jury could award damages. The medical testimony that plaintiff-husband had reached maximum improvement and was "going to be the way he is now" sufficed to justify the instruction on plaintiff-wife's entitlement to compensation for future loss of consortium. This contention is thus without merit.

## DIRECTED VERDICT/JNOV

[12] Defendants contend the court erred in denying their motions for directed verdict and judgment notwithstanding the verdict on the loss of consortium issue. As noted above, we find

substantial evidence of diminution of various aspects of the marital relationship which merited submission of this issue to the jury.

As part of this argument defendants contend that while there was evidence as to household chores which plaintiff-husband performed before the collision, which he could not perform afterward, there was no evidence as to the value of such services. In light of the substantial evidence as to loss of consortium in other respects, however, absence of such evidence did not mandate removal of this issue from the jury. Moreover, our Supreme Court has expressly rejected the "inference that damages in a consortium action are too remote to measure." *Nicholson, supra,* 300 N.C. at 302, 266 S.E. 2d at 822. The assessment of damages for loss of consortium, as for wrongful death, "must, to a large extent, be left to the good sense and fair judgment of the jury — subject . . . to the discretionary power of the judge to set its verdict aside when, in his opinion, equity and justice so require." *Brown v. Moore,* 286 N.C. 664, 673, 213 S.E. 2d 342, 348-49 (1975); *see* 74 A.L.R. 3d 805, 811-12 (1976) (amount of damages for loss of consortium must be left to "enlightened consciences" or "experience and judgment" of impartial jurors).

The court did not err in denying the motions for directed verdict and judgment notwithstanding the verdict on the loss of consortium issue.

## MOTION TO SET ASIDE VERDICTS

[13]   Defendants contend the court erred in denying their G.S. 1A-1, Rule 59(b) motion to set aside the verdicts on grounds of excessiveness. The motion was directed to the sound discretion of the trial judge, and his decision will not be disturbed absent obvious abuse. *Griffin v. Griffin,* 45 N.C. App. 531, 533, 263 S.E. 2d 39, 41 (1980). "[A]n appellate court should not disturb a discretionary Rule 59 order unless it is reasonably convinced by the cold record that the trial judge's ruling probably amounted to a substantial miscarriage of justice." *Worthington v. Bynum,* 305 N.C. 478, 487, 290 S.E. 2d 599, 605 (1982).

The record contains substantial evidence that as a result of the collision plaintiff-husband sustained severe temporary injuries, including lacerations, contusions, spinal fracture, and concus-

sion. It indicates that he had continuing problems which included depression, numbness, weakness, insomnia, pain in his neck and side, and sexual impairment; that he lost earnings and was incapacitated to perform physical labor; and that the general quality of his life was diminished in numerous respects. It establishes a demonstrable diminution in the quality of his relationship with plaintiff-wife. It indicates that at the time of trial he had reached maximum improvement, and thus that the numerous problems he was then experiencing could be expected to continue. Finally, it establishes that when he received the injuries, he had a life expectancy of an additional 31.57 years.

In light of the foregoing, denial of defendants' motion did not amount to a substantial miscarriage of justice, and we find no abuse of discretion.

No error.

Chief Judge VAUGHN and Judge PHILLIPS concur.