KERRY WATTS, Plaintiff v. NORTH CAROLINA DEPARTMENT OF ENVIRONMENT
AND NATURAL RESOURCES, Defendant

No. COA06-299

(Filed 20 March 2007)

**1. Appeal and Error— preservation of issue—public duty doctrine—argued in motion, addressed by Industrial Commission—assignment of error**

An issue concerning the public duty doctrine was preserved for appeal where defendant argued in its motion to dismiss that the doctrine barred plaintiff's claim (although it did not further argue the motion at the hearing), the Industrial Commission concluded that plaintiff had a duty of care in assessing plaintiff's lot for a septic system, and defendant assigned as error the Commission's failure to apply the doctrine.

**2. Immunity— public duty doctrine—revocation of septic permit—pleading, evidence, conclusion**

The special duty exception to the public duty doctrine applied where defendant, through its agent the Health Department, made a promise to plaintiff by issuing an improvement permit based upon its finding that soil conditions would support a three-bedroom house on property plaintiff wanted to purchase, plaintiff relied on the permit in purchasing the property, defendant revoked the permit after the purchase, and plaintiff was caused to incur additional expense to use the lot as he had planned.

**3. Negligence— admission—supported by finding without assignment of error**

A conclusion by the Industrial Commission that defendant had admitted to negligent conduct was supported by a finding to the same effect, to which defendant did not assign error. The finding was binding.

**4. Damages and Remedies— revocation of septic permit—future interest rate damages—uncertain**

Appellant did not assign error to the Industrial Commission's Tort Claims award of damages for increased land purchase and construction costs following a revoked septic permit, and review was limited to future interest rate damages. Those damages were uncertain, speculative, and too remote to be recoverable.

**5. Tort Claims Act— attorney fee award—not supported by statutes**

The Industrial Commission erred by awarding attorney fees in a Tort Claims case where none of the statutes cited by the Commission supported its award.

Judge TYSON concurring in part and dissenting in part.

Appeal by defendant from decision and order entered 8 August 2005 by the North Carolina Industrial Commission. Heard in the Court of Appeals 13 November 2006.

*James, McElroy & Diehl, P.A., by John·R. Buric, for plaintiff-appellee.*

*Roy Cooper, Attorney General, by Dahr Joseph Tanoury, Assistant Attorney General, for defendant-appellant.*

MARTIN, Chief Judge.

Defendant North Carolina Department of Environment and Natural Resources (NCDENR) appeals from a decision and order of the North Carolina Industrial Commission awarding $267,733 in damages to plaintiff arising from NCDENR's negligent issuance of an improvement permit for land purchased by the plaintiff.

Plaintiff entered into a contract to purchase an undeveloped lakefront lot in Montgomery County. A condition of the contract was that the land "perk" for a three-bedroom residence, meaning that the soil was suitable to support an on-site wastewater system. On 30 July 1999, after inspecting the site, David Ezzell ("Ezzell"), an agent of the Montgomery County Health Department ("Health Department") and NCDENR, issued an improvement permit authorizing construction of a three-bedroom home on the lot. In reliance on the improvement permit, plaintiff purchased the lot for $118,000 and subsequently added a boat dock at a cost of $29,023.94.

In 2002 plaintiff began to pursue his plans to develop the lot. Plaintiff met with a mortgage loan broker about financing the development, seeking an interest-only construction loan that would convert to a thirty-year mortgage upon completion of the construction. Although plaintiff did not apply for a loan at that time, the broker testified that when they met in 2002 plaintiff qualified for the financing at a rate of approximately 5.44% interest for the thirty-year, fixed-rate mortgage.

As plaintiff prepared the site and the construction plans, he decided that he could better use the lot if the proposed driveway were switched from the left side to the right side of the lot. In order to get approval for this change, plaintiff was required to apply for a new permit. The perk test performed for the new permit revealed that the soil would not perk for the new construction plan, nor would it perk for the original construction plan; therefore, the Health Department notified plaintiff that the permit issued in July 1999 was being revoked. Plaintiff requested that the soil be retested. The retest confirmed the result that the soil was unsuitable for a ground absorption sewage system. Plaintiff was notified of three ways in which the situation could be remedied: (1) he could purchase another adjoining parcel of property with suitable or provisionally suitable soil on which to place the ground absorption sewage treatment and disposal system, and plaintiff could install a system capable of pumping the effluent to the adjoining parcel; (2) he could obtain an easement to another parcel of property with suitable or provisionally suitable soil on which to place the ground absorption sewage treatment and disposal system and install a system capable of pumping the effluent to the adjoining parcel; or (3) he could install a septic system incorporating both pretreatment (sand or peat filter) and a subsurface drip irrigation under the soil and site conditions of the lot, although the septic system would have to be designed and installed by a professional engineer or individuals authorized in writing by the pretreatment and drip irrigation manufacturers. Plaintiff elected to purchase an adjoining parcel for $70,000. Although plaintiff's contact throughout this process was with the Health Department, the parties stipulated that "the agency of the defendant in question in this case is the Montgomery County Health Department of Montgomery County, North Carolina, and . . . how it operates, it is an agent of the State of North Carolina; i.e., the North Carolina Department of Environment[al] and Natural Resources."

On 2 July 2003, plaintiff filed an action under the North Carolina Tort Claims Act, N.C.G.S. §§ 143-291 *et seq.*, against Ezzell, the Health Department, and NCDENR alleging that defendants had negligently inspected and issued an improvement permit for his lot. Defendants moved to dismiss on jurisdictional grounds and for failure to state a claim upon which relief could be granted. Plaintiff's complaint was heard by the North Carolina Industrial Commission on 15 November 2004. The Deputy Commissioner dismissed the claim against Mr. Ezzell, as he was not a proper party before the Industrial Commission. As to the defendants Health Department and NCDENR, the

Deputy Commissioner ordered them jointly and severally liable for $267,733 in compensatory damages to plaintiff, $18,611.07 in attorney fees, and $13,034 in costs and expenses. Of the $267,733 compensatory damages, $174,745.54 represent damages arising from future interest payments. NCDENR appealed the decision of the Deputy Commissioner to the full Industrial Commission. The full Commission agreed with the findings and conclusions of the Deputy Commissioner and affirmed the awards of compensatory damages, attorney fees, and costs and expenses. NCDENR appealed the full Commission's decision and order to this Court.

---

NCDENR raises five issues on appeal.

## I. Public Duty Doctrine

[1] First, NCDENR argues that the Industrial Commission erred in failing to find and conclude that plaintiff's claim is barred by the public duty doctrine. We first address whether this issue has been preserved for appellate review. NCDENR moved to dismiss plaintiff's claim pursuant to Rule 12(b)(1) (lack of subject matter jurisdiction), 12(b)(2) (lack of personal jurisdiction), and 12(b)(6) (failure to state a claim upon which relief can be granted), arguing that the public duty doctrine barred plaintiff's claim. N.C.R. Civ. Pro. 12(b). Although NCDENR did not further argue the motion at the hearing, the Commission concluded that "[t]he North Carolina Industrial Commission has jurisdiction over Plaintiff and Defendants [NCDENR] and The Montgomery County Health Department," and "[NCDENR] and The Montgomery County Health Department owed plaintiff a duty of care in making a proper assessment of Lot 871 before issuing Improvement Permit No. 99291, authorizing the construction of a three-bedroom residence on the lot." NCDENR has assigned as error the Commission's conclusion that it owed a duty of care to plaintiff for the Commission's failure to apply the public duty doctrine. Thus, NCDENR has preserved this issue for appeal. On appeal, "[t]he Commission's conclusions of law are reviewed *de novo*." *McRae v. Toastmaster, Inc.*, 358 N.C. 488, 496, 597 S.E.2d 695, 701 (2004).

[2] The issue before us is whether the public duty doctrine applies to bar plaintiff's claim against NCDENR for negligent inspection of soil conditions, where NCDENR issued an improvement permit for a lot, plaintiff relied on the permit to purchase the lot, and the permit was subsequently revoked, resulting in damage to plaintiff. We first recognize:

The public duty doctrine is a separate rule of common law negligence that may limit tort liability, even when the State has waived sovereign immunity. The rule provides that when a governmental entity owes a duty to the general public, particularly a statutory duty, individual plaintiffs may not enforce the duty in tort.

*Myers v. McGrady*, 360 N.C. 460, 465-66, 628 S.E.2d 761, 766 (2006).

Our Supreme Court has held that "the legislature intended the public duty doctrine to apply to claims against the State under the Tort Claims Act." *Stone v. N.C. Dep't of Labor*, 347 N.C. 473, 482, 495 S.E.2d 711, 716 (1998). The Supreme Court has also "extended the public duty doctrine to state agencies required by statute to conduct inspections for the public's general protection." *Lovelace v. City of Shelby*, 351 N.C. 458, 461, 526 S.E.2d 652, 654 (2000); *see also Hunt v. N.C. Dep't of Labor*, 348 N.C. 192, 202, 499 S.E.2d 747, 753 (1998); *Stone*, 347 N.C. at 483, 495 S.E.2d at 717. In the present case, the Health Department, an agent of NCDENR, is a state agency required to inspect site for suitability of wastewater treatment systems before issuing improvement permits by N.C.G.S. § 130A-336, and therefore may avail itself of the protection afforded by the public duty doctrine.

The public duty doctrine, however, is subject to two exceptions.

In *Braswell* this Court recognized two exceptions to the public duty doctrine "to prevent inevitable inequities to certain individuals." It explained that exceptions to the doctrine exist: (1) where there is a special relationship between the injured party and the governmental entity; and (2) when the governmental entity creates a special duty by promising protection to an individual, the protection is not forthcoming, and the individual's reliance on the promise of protection is causally related to the injury suffered. These exceptions are narrowly construed and applied.

*Stone*, 347 N.C. at 482-83, 495 S.E.2d at 717 (quoting *Braswell v. Braswell*, 330 N.C. 363, 371, 410 S.E.2d 897, 902 (1991)) (citations omitted). We must consider whether the facts of the present case warrant the application of one of the exceptions to the public duty doctrine.

The special duty exception requires (1) a promise of protection made by the governmental entity, (2) the entity's failure to protect, and (3) reliance by the individual on the promise, causing damage to the individual. *Id.* at 482, 495 S.E.2d at 717 (citing *Braswell*, 330 N.C.

at 371, 410 S.E.2d at 902); *see also Cockerham-Ellerbee v. Town of Jonesville,* 176 N.C. App. 372, 377, 626 S.E.2d 685, 689 (2006) (quoting *Braswell,* 330 N.C. at 371, 410 S.E.2d at 902). "[T]he 'special duty' exception . . . is a very narrow one; it should be applied only when the promise, reliance, and causation are manifestly present." *Braswell,* 330 N.C. at 372, 410 S.E.2d at 902.

As the dissent notes, the plaintiff bears the burden to allege and prove an exception to the public duty doctrine. *See Wood v. Guilford County,* 355 N.C. 161, 170, 558 S.E.2d 490, 497 (2002). However, the dissent contends that "[t]he plaintiff neither asserted nor proved nor did the Commission make any findings of fact or conclusions of law to show either of the[] means to establish a special duty/special relationship existed." This contention is faulty for a number of reasons.

First, the plaintiff asserted the special duty exception by presenting evidence that a special duty existed. Although plaintiff did not plead a special duty in his complaint, after the defense was pled, plaintiff's evidence with respect to the issue, to which defendant did not object, was an implied amendment to conform to the evidence. N.C.R. Civ. Pro. 15(b) (2005) ("When issues not raised by the pleadings are tried by the express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings.")

[Rule 15(b)] allows issues to be raised by liberal amendments to pleadings, and, in some cases, by the evidence, the effect of the rule being to allow amendment by implied consent to change the legal theory of the cause of action so long as the opposing party has not been prejudiced in presenting his case, i.e., where he had a fair opportunity to defend his case.

*Taylor v. Gillespie,* 66 N.C. App. 302, 305, 311 S.E.2d 362, 364 (1984) (emphasis omitted). In the present case, the plaintiff and defendant stipulated to the facts supporting the issue of the special duty exception, and plaintiff further offered exhibits in support of the issue. Defendant cannot argue prejudice when it voluntarily stipulated to the facts.

Second, the plaintiff met his burden of proof where the facts supporting the exception were admitted by stipulation.

Third, the Commission made findings of fact and conclusions of law to support the application of the special duty exception. The Commission specifically found:

On July 27, 1999, plaintiff entered into an Offer to Purchase and Contract for Lot No. 871, Hattaway Circle, located in Montgomery County, North Carolina. One of the conditions precedent to plaintiff purchasing Lot 871 was that the lot perk for a three-bedroom residence.

On July 30, 1999, after confirming that the soils then present on Lot 871 were suitable for a septic system, The Montgomery County Health Department, Environmental Health Section, issued Improvement Permit No. 99291, authorizing the construction of a three-bedroom residence on Lot 871.

In reliance upon the permit, plaintiff purchased Lot 871 for a purchase price of $118,000.00.

On September 5, 2002, John K. Fowlkes, then acting Environmental Health Coordinator for The Montgomery County Health Department, notified Plaintiff that Lot 871 did not pass the perk test.

These findings contain all of the elements of the special duty exception. NCDENR, through its agent the Health Department, made a promise to plaintiff by issuing the improvement permit warranting that plaintiff could construct a three-bedroom home on the property as described in the site plan. Plaintiff relied on the permit in negotiating the purchase of the property. Finally, NCDENR, through its agent the Health Department, revoked the permit after plaintiff purchased the lot, prohibiting plaintiff from building on the lot as the permit promised he would be able to do, and causing plaintiff to incur additional expenses in order to use the lot as he had planned.

Based on these findings of fact, the Commission concluded:

[NCDENR] and The Montgomery County Health Department owed plaintiff a duty of care in making a proper assessment of Lot 871 before issuing Improvement Permit No. 99291 . . . . The defendants failed in this duty of care when they admittedly negligently issued Permit No. 99291 upon discovering that the property was unsuitable for a ground absorption sewage system. Defendant's breach directly and proximately caused plaintiff to incur damages . . . .

This conclusion comprises all of the elements of the special duty exception except the reliance element. The conclusion also indicates

that the duty was owed to plaintiff individually rather than solely to the general public. It is this conclusion of law that defendant assigned as error for failure to apply the public duty doctrine. "The Commission's conclusions of law are reviewed *de novo*." *McRae*, 358 N.C. at 496, 597 S.E.2d at 701. Although the Commission failed to specifically conclude that the special duty exception to the public duty doctrine applied, its conclusion was adequately supported by the facts; therefore, it is affirmed.

## II. Admission of Negligence

[3] Next, NCDENR argues that the Industrial Commission's conclusion that NCDENR admitted to negligent conduct is not supported by the findings of fact or competent evidence. In its finding of fact 9, the Commission found "[p]rior to the trial of this matter, defendants admitted that they were negligent in issuing Permit No. 99291." Since NCDENR did not assign error to this finding of fact, it is binding upon us. N.C.R. App. P. 10(a) (scope of review is limited to the consideration of the assignments of error set out in the record on appeal); *Johnson v. Herbie's Place*, 157 N.C. App. 168, 180, 579 S.E.2d 110, 118 (2003). Finding of fact 9 adequately supports the Commission's conclusion that NCDENR admitted negligence.

## III. Interest Rate Damages

[4] NCDENR also assigned error to the future interest rate damages awarded by the Commission, arguing that they were not reasonably foreseeable, were speculative, remote, and not reasonably certain, and were awarded according to an improper measure of damages. The Commission based its award on a finding of fact that "as a result of defendants' negligence and the resulting delay in construction, plaintiff will incur an increased interest rate of at least 1.5% over the term of its loan. The cost of this 1.5% increase in interest is $174,745.54." NCDENR argues that this finding is not supported by the competent evidence, and that it does not support the Commission's conclusion of law that "[d]efendants' breach directly and proximately caused plaintiff to incur damages in the amount of $267,733.00."

Assuming, *arguendo*, the Commission's finding of fact is supported by competent evidence, the finding does not support the Commission's conclusion that plaintiff is entitled to recover $174,745.54 in future interest damages. It is true that a tortfeasor "is responsible for all damages directly caused by his misconduct, and for all indirect or consequential damages which are the natural

and probable effect of the wrong, under the facts as they exist at the time the same is committed and which can be ascertained with a reasonable degree of certainty." *Binder v. General Motors Acceptance Corp.*, 222 N.C. 512, 514, 23 S.E.2d 894, 895 (1943) (quoting *Conrad v. Shuford*, 174 N.C. 719, 721, 94 S.E. 424, 425 (1917)). However, "[d]amages which are uncertain and speculative . . . are too remote to be recoverable." *Johnson v. Atlantic Coast Line R.R. Co.*, 184 N.C. 101, 105, 113 S.E. 606, 608 (1922). The future interest damages included in the Commission's award are uncertain, speculative, and too remote to be recoverable. The figure for future interest damages was calculated based on financial data about projected interest rates, the anticipated number of years over which the loan would accrue interest, and the type of loan (fixed, as opposed to variable). The numbers further depend on plaintiff completing construction of the home on time and according to schedule. In sum total, these factors make the figure of $174,745.54 uncertain and speculative. Our Supreme Court has held that such damages are not recoverable, *id.*; thus, we hold that the Commission erred in including the amount of $174,745.54 in the damages award.

With regard to the proper measure of damages, NCDENR argues that the Commission should have used the diminution of value of the property to calculate the damages. However, NCDENR did not assign error to the Commission's award of damages for the cost of purchasing the adjoining lot and constructing a suitable septic system on the lot and the increased construction costs. Thus, our review is limited to the award of future interest rate damages. N.C.R. App. P. 10(a) ("[T]he scope of review on appeal is confined to a consideration of those assignments of error set out in the record on appeal.") Because we reverse the Commission's award of future interest rate damages on the grounds that they are speculative, we need not address the measure of damages used.

In addition to the speculative nature of the damages, the award is also error because it fails to discount the future interest rate damages to present value. It is well established that damages for losses which may occur in the future, such as the future interest rate payments in this case, must be reduced to the present worth of such losses, and it is error not to do so. *Faison v. Cribb*, 241 N.C. 303, 303, 85 S.E.2d 139, 140 (1954); *Daughtry v. Cline*, 224 N.C. 381, 384, 30 S.E.2d 322, 324 (1944); *Lamont v. Highsmith Hospital*, 206 N.C. 111, 112-13, 173 S.E. 46, 46-47 (1934).

### IV. Award of Costs and Attorney Fees

**[5]** NCDENR also assigns error to the award of costs and attorney fees to the plaintiff, arguing these amounts are not recoverable under the Tort Claims Act.

We consider NCDENR's argument first as to costs. Our statutes state "[t]he Industrial Commission is authorized . . . to tax the costs against the loser in the same manner as costs are taxed by the superior court in civil actions," N.C. Gen. Stat. § 143-291.1 (2005), and in civil actions "costs may be allowed or not, in the discretion of the court, unless otherwise provided by law." N.C. Gen. Stat. § 6-20 (2005). When read together, these statutes give the Commission discretion to tax costs against the losing party. "Where the court has taxed costs in a discretionary manner its decision is not reviewable." *Dixon, Odom & Co. v. Sledge*, 59 N.C. App. 280, 286, 296 S.E.2d 512, 516 (1982) (citing *Hoskins v. Hoskins*, 259 N.C. 704, 131 S.E.2d 326 (1963)). Because the Commission's authority to tax costs is discretionary, its award is not reviewable by this Court, absent a showing of manifest abuse of discretion. However, its conclusions of law are reviewable *de novo. McRae*, 358 N.C. at 496, 597 S.E.2d at 701.

The Commission cited several statutes supporting its award of attorney fees, including N.C.G.S. §§ 1A-1 Rule 11, 6-21.5, 7A-305(d)(3), 143-291, and 143-291.1. None of these statutes support the Commission's award in the present case.

The Commission first cited N.C.G.S. § 1A-1 Rule 11 in support of its award. Rule 11 allows a court to award attorney fees as an appropriate sanction against an attorney who violates the rule. To comply with Rule 11, an attorney who submits a signed pleading, motion, or other paper to the court must ensure:

> [T]o the best of his knowledge, information, and belief formed after reasonable inquiry [the document] is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

By citing Rule 11 as support for an award of attorney fees, the Commission implies that the award is imposed as a sanction against NCDENR for violation of the rule. We note that the "imposition of [Rule 11] sanctions is reviewable *de novo*, but the choice of sanction

is reviewable under an abuse of discretion standard." *Crutchfield v. Crutchfield*, 132 N.C. App. 193, 195, 511 S.E.2d 31, 33 (1999).

Reviewing the imposition of the sanction *de novo*, we find no facts to support it. The Commission made only one finding that contains any of the elements of a Rule 11 sanction, as follows:

Defendants' position on damages cannot be supported by the evidence of record. Defendants have raised defenses that cannot be supported in law, contending that plaintiff would have been obligated to purchase a second lot even if defendants had not been negligent, or that plaintiff should be compelled to accept the untested system outlined herein. Defendants' contention that either fact lowered plaintiff's damage claim to approximately $8,000.00 was belied by their own evidence.

Although the Commission cited the lack of facts and law to support the amount of damages for which NCDENR advocated, the amount of $8,000 did not appear in any pleading, motion, or other paper filed with the Commission, but was rather an argument made by defense counsel at the hearing. As such, "defendants' position" is not the proper subject of a Rule 11 sanction. Finding no other grounds for Rule 11 sanctions, we hold that the Commission erred to the extent it relied on Rule 11 to support its award of attorney fees to plaintiff.

The Commission next relied on N.C.G.S. § 6-21.5 to support its award of attorney fees. Section 6-21.5 states "[i]n any civil action . . . the court, upon motion of the prevailing party, may award a reasonable attorney's fee to the prevailing party if the court finds that there was a complete absence of a justiciable issue of either law or fact raised by the losing party in any pleading." The Commission made no findings to support a conclusion that NCDENR presented no justiciable issue. Thus, § 6-21.5 is inapplicable in the present case and does not support the Commission's award of attorney fees.

The Commission also cited N.C.G.S. § 7A-305(d)(3) as authority for its award of attorney fees. This statute authorizes the court in civil actions to assess or recover "[c]ounsel fees, as provided by law." The statute does not specifically grant the courts the authority to award attorney fees, but only recognizes that such authority may be conferred by other statutes. Having found no other statute which is applicable to the present case that grants the courts the authority to award attorney fees, we conclude that § 7A-305(d)(3) does not grant such authority to the courts and, by extension, the Commission.

Finally, the Commission cited N.C.G.S. §§ 143-291 and 143-291.1 support an award of attorney fees. When read by themselves, neither section grants the Commission the authority to award attorney fees. However, when read together with § 6-21.1, this Court has held "the Industrial Commission has jurisdiction and authority to award attorney's fees in a Tort Claims Act case." *Karp v. Univ. of North Carolina*, 88 N.C. App. 282, 284, 362 S.E.2d 825, 826 (1987), *aff'd per curiam*, 323 N.C. 473, 373 S.E.2d 430 (1988). Section 6-21.1 provides "where the judgment for recovery of damages is ten thousand dollars ($10,000) or less, the presiding judge may, in his discretion, allow a reasonable attorney fee . . . ." N.C. Gen. Stat. § 6-21.1 (2005). The total damages awarded in the present case were $267,733. Even excluding the future interest damages of $174,754.54, the plaintiff's damages far exceed the statutory maximum of $10,000, and so we find that the Commission was not authorized under §§ 143-291 and 143-291.1 to award attorney fees to plaintiff.

Because none of the statutes cited by the Commission support its award of attorney fees to plaintiff, we hold the Commission erred in awarding attorney fees.

V. Acceptance of Additional Evidence

NCDENR's final argument is that the Commission erred in denying its motion, made after the conclusion of the hearing, for the Commission to take additional evidence regarding present day discounted value of the future interest rate damages. Because we have reversed and remanded the award of future interest damages on other grounds, we need not consider whether the Commission erred in refusing the additional evidence.

Affirmed as to the Commission's denial of NCDENR's motion to dismiss based on the public duty doctrine and its award of costs, reversed and remanded as to award of interest rate damages and attorney fees.

Affirmed in part; reversed and remanded in part.

Judge CALABRIA concurs.

Judge TYSON concurs in part and dissents in part by separate opinion.

TYSON, Judge, concurring in part, dissenting in part.

I concur with the majority's holding that NCDENR properly preserved its assignment of error, that its appeal is properly before us, and that the public duty doctrine applies to the facts before us.

The majority's opinion also holds that plaintiff showed, and the Commission found, a special relationship existed or a special duty was owed by NCDENR to plaintiff.

Plaintiff bears the burden of proof to overcome the public duty doctrine. *Wood v. Guilford Cty.*, 355 N.C. 161, 170, 558 S.E.2d 490, 497 (2002). The majority's opinion correctly notes the special duty/special relationship exceptions to the public duty doctrine are "narrow exceptions." *Stone v. N.C. Dept. of Labor*, 347 N.C. 473, 482-83, 495 S.E.2d 711, 717, *cert. denied*, 525 U.S. 1016, 142 L. Ed. 2d 449 (1998) ("These exceptions are narrowly construed and applied."); *Braswell v. Braswell*, 330 N.C. 363, 372, 410 S.E.2d 897, 902 (1991) ("[T]he 'special duty' exception to the general rule . . . is a very narrow one; it should be applied only when the promise, reliance, and causation are manifestly present."). Nothing in the record shows that plaintiff asserted or proved, or that the Commission found, a special duty was owed or special relationship existed between plaintiff and NCDENR.

NCDENR's motion to dismiss should have been granted. I vote to reverse the Commission's opinion and award and remand for entry of dismissal. I respectfully dissent.

## I.  Background

On 27 July 1999, plaintiff entered into an Offer to Purchase and Contract ("the contract") with Donald L. McAvoy, Jr. ("Seller") for Lot 871 ("Lot 871") in Montgomery County, North Carolina. The contract was contingent upon the "lot perking for 3 bedrooms." On 30 July 1999, Seller's agent Tommy Blake obtained an improvement permit from the Montgomery County Health Department ("Permit 99291"). Permit 99291 approved the installation of an on-site wastewater system and was "subject to revocation if the site plans or intended use change[d] from those shown above or on the application." Permit 99291 authorized construction of the wastewater system for five years from the date of issuance.

Nearly three years after purchasing Lot 871, plaintiff modified his site plan and moved the driveway from the left-hand to the right-hand portion of Lot 871. In June 2002, plaintiff notified the Mont-

gomery County Health Department of the proposed change and was informed that he must reapply for an improvement permit because of his changes.

On 3 June 2002, plaintiff applied for an improvement permit. Montgomery County Health Department denied plaintiff's application due to unsuitable soil topography, unsuitable soil characteristics, and unsuitable soil depth. On 5 September 2002, Montgomery County Environment Health Coordinator Jon Fowlkes also notified plaintiff that the original Permit 99291 was revoked as of 21 August 2002 because the site was unsuitable for a ground absorption sewage system.

## II. Standard of Review

The standard of review under the Tort Claims Act is well settled. "[W]hen considering an appeal from the Commission, our Court is limited to two questions: (1) whether competent evidence exists to support the Commission's findings of fact, and (2) whether the Commission's findings of fact justify its conclusions of law and decision." *Simmons v. N.C. Dept. of Transportation*, 128 N.C. App. 402, 405-06, 496 S.E.2d 790, 793 (1998). "Mixed issue of fact and law and conclusions of law are reviewable *de novo* on appeal." *Starco, Inc. v. AMG Bonding and Ins. Services*, 124 N.C. App. 332, 336, 477 S.E.2d 211, 215 (1996).

## III. Exceptions to Public Duty Doctrine

In all negligence actions, the plaintiff must allege and prove the defendant owed the plaintiff a duty of care. *Wood*, 355 N.C. at 170, 558 S.E.2d at 497. To be actionable, the defendant must specifically owe a duty to the injured plaintiff, and not to the public generally. *Id.* at 166, 558 S.E.2d at 493-94. This burden of proof remains on the plaintiff whether the defendant is a governmental entity or a private person. *Id.*

"The public duty doctrine is a separate rule of common law negligence that may limit tort liability, even when the State has waived sovereign immunity." *Myers v. McGrady*, 360 N.C. 460, 465, 628 S.E.2d 761, 766 (2006). The public duty doctrine "provides that governmental entities and their agents owe duties *only to the general public*, not to individuals, absent a 'special relationship' or 'special duty' between the entity and the injured party." *Stone*, 347 N.C. at 477-78, 495 S.E.2d at 714 (emphasis supplied).

"The rule provides that when a governmental entity owes a duty to the general public, *particularly a statutory duty*, individual plaintiffs may not enforce the duty in tort." *Myers*, 360 N.C. at 465-66, 628 S.E.2d at 766 (emphasis supplied). The public duty doctrine applies "to state agencies required by statute to conduct inspections for the public's general protection." *Wood*, 355 N.C. at 167, 558 S.E.2d at 495.

The majority's opinion correctly notes that the public duty doctrine is subject to two exceptions:

> (1) where there is a special relationship between the injured party and the governmental entity; and (2) when the governmental entity creates a special duty by promising protection to an individual, the protection is not forthcoming, and the individual's reliance on the promise of protection is causally related to the injury suffered. *These exceptions are narrowly construed and applied.*

*Stone*, 347 N.C. at 482-83, 495 S.E.2d at 717 (emphasis supplied).

This Court recently held a special duty may be created in one of three ways.

> First, a special duty is created where the municipality, through its police officers, . . . promise[s] protection to an individual, the protection is not forthcoming, and the individual's reliance on the promise of protection is causally related to the injury suffered. Second, a special duty may be created by virtue of a special relationship, such as that between a state's witness or informant . . . [and] law enforcement officers. We note that some confusion has arisen in this area due to the fact that this Court has previously referred to the special relationship exception as being a separate exception to the public duty doctrine, when, in fact, it is actually a subset of the special duty exception. A special relationship is simply another way to show that a special duty exists. Third, a special duty may be created by statute; provided there is an express statutory provision vesting individual claimants with a private cause of action for violations of the statute. Our courts have generally held that a private right of action only exists where the legislature expressly provides for such in the statute.

*Cockerham-Ellerbee v. Town of Jonesville*, 176 N.C. App. 372, 377, 626 S.E.2d 685, 689 (2006) (internal quotations and citations omitted). The plaintiff neither asserted nor proved nor did the Commission make any findings of fact or conclusions of law to show either of

these means to establish a special duty/special relationship existed. No "express statutory provision" vested plaintiff with "a private right of action." *Id.* No "special relationship" was shown between plaintiff and NCDENR. *Id.* (internal quotation omitted).

"[T]he 'special duty' exception to the general rule . . . is a very narrow one; it should be applied only when the promise, reliance, and causation are manifestly present." *Braswell*, 330 N.C. at 372, 410 S.E.2d at 902. In order to claim the special duty/special relationship exception of the public duty doctrine, the plaintiff must allege and prove: (1) a promise of protection made by the governmental entity; (2) the entity's failure to protect; and (3) reliance by the individual on the promise resulting in damage to the individual. *Stone*, 347 N.C. at 482-83, 495 S.E.2d at 717.

## A. Promise of Protection

Plaintiff failed to show NCDENR made any promise to him. *See Hunt v. N.C. Dept. of Labor*, 348 N.C. 192, 199, 499 S.E.2d 747, 751 (1998) (If the plaintiff failed to allege an actual promise, then the "special duty" exception cannot be a basis of liability.); *cf. Davis v. Messer*, 119 N.C. App. 44, 56, 457 S.E.2d 902, 910 (Holding the plaintiffs' allegations that "the Town . . . promised it would provide firefighting assistance and protection; [that] the promised protection never arrived; and [that] plaintiffs relied upon the promise to respond to the fire as their exclusive source of aid, resulting in the complete destruction of their home," stated a claim for relief under the "special duty" exception to the public duty doctrine.), *disc. rev. denied*, 341 N.C. 647, 462 S.E.2d 508 (1995).

The Commission's finding that Montgomery County Health Department issued Permit 99291 does not create a promise to protect plaintiff. The majority's opinion strains to impliedly excuse plaintiff's failure to allege any promise and the Commission's failure to address NCDENR's assertions of the public duty doctrine. Nothing in the record shows NCDENR extended a promise of protection to plaintiff when Permit 99291 was issued. Plaintiff failed to prove, and the Commission failed to enter, findings of fact or conclusions of law to establish the first element in the special duty/special relationship exception to the public duty doctrine.

## B. Failure to Protect

Plaintiff also failed to show NCDENR's issuance of Permit 99291 was NCDENR's failure to protect him. The Commission failed to enter

findings of fact that NCDENR failed to protect plaintiff when it issued Permit 99291.

Even if NCDENR admitted Ezzell was negligent in issuing the original permit, Ezzell's statutory duty to inspect was owed to the public generally and not to any individual. The purpose of the inspection and issuance of permits to install septic tank systems is for the protection and benefit of public health, safety, and welfare. N.C. Gen. Stat. § 130A-333 (2005); *see Stone*, 347 N.C. at 483, 495 S.E.2d at 717 (The public duty doctrine applied and duty was for the benefit of the general public when the statute charged the Commissioner of Labor with the duty to visit and inspect at reasonable hours, as often as practicable, all of the factories, mercantile establishments, mills, workshops, public eating places, and commercial institutions in the State.); *Hunt*, 348 N.C. at 198, 499 S.E.2d at 751 (The public duty doctrine applied when the Amusement Device Safety Act and the rules promulgated thereunder are for the protection of the public from exposure to such unsafe conditions and do not create a duty to a specific individual.).

Plaintiff failed to show, and the Commission failed to enter, findings of fact or conclusions of law that he established the second element in the special duty/special relationship exception to the public duty doctrine.

## C. Nonreliance and Damages

Although the Commission entered finding of fact numbered 5 that plaintiff relied on Permit 99291 as a condition to his purchase of the lot, the Commission failed to enter any finding of fact or conclusion of law that plaintiff relied on utilizing Permit 99291. Plaintiff's conduct and inaction shows he never relied on Permit 99291. Three years after purchasing the lot, plaintiff changed his site plan and sought an entirely new permit. Plaintiff failed to challenge or appeal the revocation of the original 1999 Permit 99291 and never sought to construct improvements in reliance of that permit. Plaintiff could have, but failed to, assert available administrative and judicial remedies.

Under N.C. Gen. Stat. § 150B-43 (2005):

[a]ny person who is aggrieved by the final decision in a contested case, *and who has exhausted all administrative remedies made available to him by statute or agency rule,* is entitled to judicial review of the decision under this Article, unless adequate procedure for judicial review is provided in another statute, in which

case the review shall be under such other statute. Nothing in this Chapter shall prevent any person from invoking any judicial remedy available to him under the law to test the validity of any administrative action not made reviewable under this Article.

(Emphasis supplied).

The North Carolina Administrative Code controls the issuance of septic system improvement permits. N.C. Admin. Code tit. 15A, 18A.1937 (2006). The Code also states that "[a]ppeals concerning the interpretation and enforcement of the rules in this Section shall be made in accordance with G.S. 150B and 10 NCAC 1B." N.C. Admin. Code tit. 15A, 18A.1965 (2006).

Plaintiff's failures to construct improvements consistent with the conditions of the original permit or to challenge the County's revocation of the original 1999 permit shows he never intended to rely on the original permit. Plaintiff voluntarily changed the approved site plan three years after the original permit 99291 was issued and did not appeal the County's denial of his June 2002 application for a new improvement permit. These actions show the absence of any reliance by plaintiff on Permit 99291.

Plaintiff has also failed to show, and the Commission failed to enter, findings of fact plaintiff suffered damages from the negligently issued Permit 99291. Competent evidence in the record and a finding of fact shows NCDENR provided plaintiff with an option to install a septic system within the confines of Lot 871. Plaintiff did not exercise this option, but decided to purchase an adjoining lot on which to install his septic system. Plaintiff failed to show he suffered any damages resulting from the negligently issued Permit 99291. The record shows that plaintiff failed to prove, and the Commission failed to enter, any findings of fact to support the third element of reliance or damages to prove the special duty/special relationship exception to the public duty doctrine.

## IV. Conclusion

Defendant properly asserted plaintiff's claims were barred by the public duty doctrine. The Commission failed to make any findings of fact or conclusion of law that plaintiff alleged or proved a special relationship existed or a special duty was owed by NCDENR to plaintiff. Plaintiff, not NCDENR, carried the burden of proof on this issue. *Wood*, 355 N.C. at 170, 558 S.E.2d at 497.

Nothing before the Commission or this Court tends to show NCDENR extended a promise to protect plaintiff, that NCDENR failed to protect plaintiff, and that plaintiff relied and suffered damages or did anything other than to inspect for the general public's health and benefit. I vote to reverse the Commission's opinion and award and remand to the Commission for dismissal of plaintiff's claim. I respectfully dissent.